ANDRÉ BIROTTE JR.
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
DOUGLAS F. McCORMICK (180415)
Assistant United States Attorney
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3541
    Facsimile: (714) 338-3564
    E-mail:    doug.mccormick@usdoj.gov

KATHLEEN McGOVERN, Acting Chief
ANDREW GENTIN, Trial Attorney
Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue, N.W.
    Washington, DC 20005
    Telephone: (202) 353-3551
    Facsimile: (202) 514-0152
    E-mail:    andrew.gentin@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR 09-00077-JVS |
| Plaintiff, | <u>DECLARATION OF ANDREW GENTIN IN SUPPORT OF GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION OF PORTION OF COURT'S DECEMBER 8, 2009 ORDER</u> |
| v. | |
| STUART CARSON et al., | |
| Defendants. | |

Plaintiff United States of America, by and through its attorneys of record, the United States Department of Justice, Criminal Division, Fraud Section, and the United States Attorney for the Central District of California (collectively, "the

government"), hereby files a declaration of counsel in support of the government's previously-filed Response to Defendants' Motion for Reconsideration of Portion of Court's December 8, 2009 Order.

DATED: September 17, 2010   Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

DOUGLAS F. McCORMICK
Assistant United States Attorney

KATHLEEN McGOVERN, Acting Chief
ANDREW GENTIN, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice

/s/
_____
DOUGLAS F. McCORMICK
Assistant United States Attorney

## DECLARATION OF ANDREW GENTIN

I, Andrew Gentin, declare as follows:

1. I am a Trial Attorney in the Fraud Section, Criminal Division, U.S. Department of Justice. I am an attorney representing the government in this matter.

2. Prior to interviewing several witnesses in late 2008 and early 2009, I had a telephone conversation with Brian Heberlig of Steptoe & Johnson, counsel for CCI, concerning the government's proposed plan to show a limited number of pages of the Steptoe payments chart to one or more witnesses and/or their counsel. I do not recall further the specifics of the conversation and do not have notes or other memorializing material concerning the conversation.

3. In December 2008 and continuing into the beginning of 2009, as the government was finalizing the indictment, FBI Special Agent Brian Smith and I interviewed several witnesses, most of whom we had interviewed on a prior occasion. During the course of these interviews, the government showed several witnesses certain pages of the Steptoe payments chart. I do not believe that I would have shown these witnesses certain pages of the Steptoe payments chart unless I understood from my prior conversation with Mr. Heberlig that the government could show a limited number of pages of the chart to witnesses or their counsel. However, having reviewed Mr. Heberlig's August 27, 2010 Declaration regarding this issue, it is possible that there was a miscommunication between us regarding the scope of the consent he had granted to the government to disclose a limited number of pages of the Steptoe payments chart to government witnesses or

1

their counsel.

4.   On August 17, 2009, the government produced to defense counsel the FBI 302 reports, which were drafted by FBI Special Agent Smith, describing the government's interviews of Mario Covino, Vinay Nagpal, Hua Peng, and Sara Peng. These 302 reports contained explicit references to the government showing these four witnesses certain payments "marked as payment number [x]."

5.   Approximately eighteen days after the production of these 302 reports, on September 4, 2009, the defendants filed a motion to compel discovery in which they sought, *inter alia*, the production of the documents identified on CCI's privilege log, including the Steptoe payments chart. On September 4, 2009, the defendants also filed a motion to dismiss counts 9-11 of the indictment on statute of limitations grounds.

6.   According to the defendants, on September 22, 2009, one of Mr. Carson's attorneys, Eric Raines of the law firm Gibson, Dunn & Crutcher, had a conversation with me. See Defendants' Motion for Reconsideration at 8, n.1. According to the defendants' Motion, Mr. Raines asked me to identify certain documents missing from eleven FBI 302 reports produced by the government in August 2009, and Mr. Raines recalls that I informed him that certain of the documents were pages from the Steptoe payments chart. Id. I have no notes documenting this conversation.

7.   Joshua Jessen of Gibson, Dunn & Crutcher wrote in an e-mail to me that "Mr. Raines understood from that [September 22, 2009] conversation that in December 2008, during interviews with Mario Covino, Sara Peng, and Hua Peng, the government showed

2

those witnesses portions of the charts prepared by Steptoe & Johnson that appear on the privilege log the government previously provided to the Defendants." A copy of this July 27, 2010, e-mail is attached hereto as Exhibit A and can also be found at Exhibit L to the Declaration of Nicola Hanna in Support of Defendants' Motion for Reconsideration ("Hanna Declaration").

8. On October 21, 2009, the government filed a 29-page opposition brief to defendants' motion to compel. Of these 29 pages, the government devoted less than half a page to the payments chart privilege issue. The government deferred to CCI "for the purpose of addressing its attorney-client and attorney work-product privilege claims" and indicated that it was prepared to produce the documents if so ordered. See Government's Opposition to Defendants' Motion to Compel at 23.

9. On November 2, 2009 (approximately ten weeks after receiving the Covino, Nagpal, Hua Peng, and Sara Peng 302 reports and approximately six weeks after the government, according to Mr. Carson's counsel, informed Eric Raines that the government had shown Mario Covino, Hua Peng, and Sara Peng portions of the Steptoe payments chart), the defendants filed their reply brief with respect to their Motion to Compel.

10. On November 9, 2009, the Court heard oral argument on both the motion to compel and the motion to dismiss counts 9-11. Because the government had deferred entirely to Steptoe on its privilege claim, I focused my attention at the hearing on the myriad other complex issues that the government was called upon to address concerning defendants' motion to compel and motion to dismiss counts 9-11. My failure to bring to the Court's

3

attention the fact that the government had shown or provided witnesses and counsel certain pages from the Steptoe payments chart was an inadvertent omission made due to the fact that neither I nor my co-counsel, Assistant U.S. Attorney Douglas McCormick, had focused on the selective waiver issue either prior to or during the oral argument. There was no intent on my part to hide any information from the Court or the defendants.

    11. On June 1, 2010, the government produced to defense counsel the FBI 302 reports pertaining to the government's interviews of Richard Morlok, Scott Tredo, N.B. Fung, and Tai Ha. The 302 reports describing the government's interviews of Mr. Morlok in December 2008 and February 2009 contain references to Mr. Morlok being shown payments "marked as payment number [x]."

    12. On July 19, 2010, I received a letter from Nicola Hanna, counsel for Mr. Carson, in which he wrote: "We understand from previous communications with you that in December 2008, during interviews with Mario Covino, Sara Peng, and Hua Peng, the government showed those witnesses portions of the charts prepared by Steptoe & Johnson that appear on the privilege log the government previously provided to the Defendants[]." See Exhibit K to Hanna Declaration. Mr. Hanna inquired as to whether Richard Morlok, Scott Tredo, Tai Ha, and N.B. Fung were shown the Steptoe charts and also asked that we inform him whether any persons other that Covino, Sara Peng, or Hua Peng were shown the charts. Id.

    13. While I was aware that we had shown certain pages of the Steptoe payments chart to several witnesses, I could not specifically recall which witnesses or other persons had been

4

shown the Steptoe payments chart. As a result, I reviewed the FBI 302 reports, all of which had been drafted by FBI Special Agent Smith, relating to interviews conducted by the government in late 2008 through early 2009. Upon reviewing the 302 reports, I noticed there were references to witnesses being shown "a payment marked as payment number [x]," "documents pertaining to payment [x]," "documents pertaining to a payment marked as payment [x]," and "document [x]." Because FBI Special Agent Smith had drafted the 302 reports, I asked him to review the relevant 302 reports and then explain to me the meaning of the above descriptions.

14. FBI Special Agent Smith, after reviewing the relevant 302 reports, informed me that it was his recollection that when a 302 report refers to a witness being shown "a payment marked as payment number [x]," the witness was shown both the relevant page from the Steptoe chart corresponding to the specific payment as well as the corresponding CHART documents, which contain the supporting emails and other documents in support of each alleged payment. FBI Special Agent Smith also informed me that when a 302 report refers to a witness being shown "documents pertaining to payment x," "documents pertaining to a payment marked as payment x," or "document x," it was his recollection that the witness was shown the corresponding CHART documents but not the relevant page from the Steptoe payments chart. See Declaration of FBI Special Agent Brian Smith, attached hereto as Exhibit B.

15. Upon receiving this information from FBI Special Agent Smith, I reviewed all of the 302 reports relating to interviews conducted in late 2008 and early 2009, and noted where a 302

5

report referred to a witness being shown "a payment marked as payment [x]." I also reviewed my e-mails from that time period to see whether I had provided any pages from the Steptoe payments chart to any other person.

16. As further described in my July 30, 2010, letter to defense counsel, the government's review of the relevant 302 reports indicated that the following five witnesses were shown the relevant pages from the Steptoe payments chart corresponding to the payments listed below:

- Mario Covino - 52, 212
- Richard Morlok - 29, 32, 38, 52, 94, 147, 148, 151, 212
- Vinay Nagpal - 212
- Hua Peng - 32, 38, 79, 94, 178
- Sara Peng - 32, 38, 79, 80, 94, 95

17. As further described in my July 30, 2010, letter to defense counsel, the government also provided to counsel for two of the witnesses in January, February, and March 2009 the pages of the Steptoe payments chart corresponding to the following payments:

- Janet Levine/John Crouchley (counsel for Mario Covino) - 81, 212
- Patrick O'Donnell (counsel for Han Yong Kim) - 147, 148, 151

18. In late August 2010, Mr. Heberlig called me to let me know that William Mann, who represents approximately twenty witnesses in this case, had informed Mr. Heberlig that I had sent Mr. Mann certain pages of the Steptoe payments chart. I immediately searched through my archived emails and determined that I had sent to Mr. Mann by e-mail in January and February

6

2009 the pages of the Steptoe chart relating to payments 29, 39, 103, 137, 143, 146, 160, 187, 212, 221, 223, and 230. The search of my archived emails also revealed that I had sent to Whitney Ellerman, counsel for Richard Morlok, in January 2009 the pages of the Steptoe chart relating to payments 29, 52, and 212. I immediately disclosed this information to counsel for the defendants in my August 25, 2010, letter.

19. Following the hearing on Monday, September 13, 2010, I reviewed the content of the e-mail messages I had sent to Mr. Mann to which I attached the above-listed pages of the Steptoe payments chart. Those e-mail messages indicate that I requested that Mr. Mann discuss the following transactions with the specified witnesses: Tai Ha - 146, 160; Akira Saitoh - 137, 212, 230; Manoj Mandook - 221, 223; Alain Armand - 143, 187, 221, 223; Kenneth McWhirter - 103, 187, 221; Lasse Poulsen - 29, 39; Sara Peng - 29, 39. I do not know whether Mr. Mann sent the specified pages from the Steptoe payments chart to the witnesses in the course of discussing the payments with the witnesses.

20. Aside from the disclosures listed above, I do not believe that the government has shown to any third party or counsel for any third party any other Steptoe documents over which the company has asserted a privilege.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: September 17, 2010

_____
ANDREW GENTIN