UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| United States of America, | ) | SA CR 09-77-JVS |
| | ) | |
| Plaintiff, | ) | Order re Motion for Reconsideration |
| | ) | |
| v. | ) | |
| | ) | |
| Stuart Carson *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

By the present Motion, the Stuart Carson *et al.* ("defendants") move for reconsideration of the Court's Order of December 9, 2009, granting in part and denying in part their Motion to Compel.[1] (Docket No. 133.) As outlined below, it is undisputed that the Government has shown privileged documents prepared by Steptoe & Johnson LLP ("Steptoe"), counsel for Control Components, Inc. ("CCI"), to third party witnesses and in some cases their counsel. (Government's Response, p. 6.) This constitutes good cause for reconsideration, and the Court grants the Motion to Reconsider.[2] (Local Rule 7-18.) The Court now proceeds to the merits.

I.   Background.

As part of its internal investigation of CCI, Steptoe prepared a number

---

[1] Defendant Flavio Ricotti moved orally at the hearing to join in the Motion, and the Court granted the request.

[2] The Government suggests that the defendants were aware of the disclosures of the Steptoe charts prior to filing their reply on the original motion. The Government asserts that defendants' reply was filed "approximately six weeks after the government <u>apparently</u> informed counsel for Mr. Carson" of the disclosures. (Government's Response, p 8; emphasis supplied.) This in fact appears to be the case. (Gentin Decl., ¶ 9.) In any event, the present motion is proper because at a minimum a manifest injustice would ensue if the Court were not to consider this information. (Local Rule 7-18(c).)

of charts summarizing payments made in violation of the Foreign Corrupt Practices Act. Those documents were produced to the Government under a confidentiality/non-waiver agreement ("Non-Waiver Agreement") (Hanna Decl., Ex. C), and are listed in the Government's privilege log. (Id., Ex. A.) Except as required by law, the Government is required to maintain the confidentiality of CCI's privileged documents. In its letter of July 30, 2010 (id., Ex. M, p. 2), the Government disclosed that it had shown five third parties portions of the Steptoe charts relating to specifically identified payments. The Government also advised that it had provided copies of portions of the Steptoe charts to counsel for Mario Covino and Han Yong Kim. (Id.) The Government confirms these facts in its response, and also identifies two additional counsel to whom portions of the Steptoe charts were disclosed. (Government's Response, p. 6.) Subsequent to the filing of the present motion, the Government advised counsel for the defendants that it had made portions of the Steptoe charts available to counsel for additional witnesses. (Defendants' Supplemental Brief, Ex. A.) Neither in its correspondence with defense counsel nor in its Response does the Government contend that it was required by law to disclose the Steptoe charts to third-party witnesses or their counsel.

There are conflicting views as to what transpired between counsel for CCI and the Government prior to disclosing portions of the charts. The record contains a note which CCI counsel prepared during a conversation with Government counsel on December 1, 2008. The entry reads "*show chart – to Covino's lawyer – not give it to them → we agree." (Heberlig Decl., ¶ 3 & Ex. A.) CCI counsel did not recall the note, nor did it refresh his recollection of the content of the telephone call. While conceding the Motion as to two pages shown to Covino's counsel (CCI Opposition, p. 3 n.3), CCI counsel maintains that he did not

grant consent for disclosure of the charts. (Herberlig Decl., ¶ 6.)

Government counsel came away from the December 1, 2008 conversation with a different view. He believed he could disclose any of the chart he chose to reveal to potential defendants or their counsel so long as the number of charts was limited. (Transcript, Sept. 13, 2010, p. 32 [hereinafter "Tr."].) Government counsel stated that he believed that he had discretion to pick which charts to disclose. (Id., pp. 32-33.) At the hearing, the Court asked Government counsel to file a declaration concerning these events so that the record would include an accurate, considered statement of what transpired. (Id., pp. 54-55.) In the requested declaration, Government counsel states that "it is possible that there was a miscommunication between us regarding the scope of consent [CCI counsel] granted to the government to disclose a limited number of pages of the Steptoe payment chart to government witnesses or their counsel." (Gentin Decl., ¶ 3.)

While deferring to Steptoe on privilege issues, the Government indicates that it is prepared to produce the documents to the extent that the Court finds a waiver of privilege. (Government's Response, p. 3.)

Separate and apart from the waiver issue is the question of the candor of CCI counsel and Government counsel at the original hearing on the Motion to Compel. The Court deals with that issue separately below.

II. Discussion.

      A. Extent and Scope of Waiver.

It is black-letter law that a failure to preserve the confidentiality of a privileged document or communication waives the privilege. United States v. Plache, 913 F.2d 1375, 1379 (9th Cir.1990); Weil v. Investment/Indicators, Research & Mgmt., 647 F.2d 18, 24 (9th Cir.1981); In re Syncor Erisa Litigation, 229 F.R.D. 636, 645 (C.D. Cal. 2005). The undisputed facts here establish voluntary disclosure of some charts and hence a waiver.

After persistent, and somewhat frustrating, questioning by the Court, Government counsel admitted at the hearing that the voluntary disclosure of the privileged charts compels production in this case. (Tr., pp. 37-39.) He acknowledged that the Government could not use CCI's withholding of consent to trump the Government's discovery obligations. (Id., p. 39.)

CCI opposes the present Motion on the ground that the Government's disclosure of the Steptoe charts was not authorized, and violated its Non-Waiver Agreement.[3] The present Motion invites the Court to reconsider its earlier holding that the Non-Waiver Agreement is valid (Docket No. 133, p. 7-8) on the basis of subsequent conduct. (Motion, pp. 12-13.) The Court rejects the invitation because it cannot make the post-hoc assumption of ambiguity in the scope of the

---

[3]CCI concedes the Motion with respect to two pages which were shown to Mario Covino's counsel. (CCI Opposition, p. 3 n.3.)

5

confidentiality obligation which the defendants posit.  Thus, the Court considers only the issue of waiver and the extent of waiver.

CCI analogizes its arrangement with the Government to joint defense cases where courts have recognized that one party to a joint defense agreement cannot effect a waiver without the consent of all.  E.g., John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 556 (8th Cir. 1990).  Indeed, CCI asserts that its objection is even stronger because here CCI holds the privilege and the Government holds none.  (CCI Opposition, p. 12.)

Were this a civil matter, the Court would have little difficulty upholding the privileged status of CCI's documents in the face of an unauthorized disclosure.  However, the Government has taken the benefit of disclosing portions of the Steptoe charts in the preparation of its case.  Fairness requires that the defendants have the same benefit.  The Court agrees that showing the privileged documents to potential witnesses such as Mario Covino and Richard Morlok creates a substantial need for the disclosed documents to enable the defendants to conduct effective cross examination.  (Defendants' Reply, pp. 7-8, citing Fed. R. Civ. P. 26(b)(3); James Julian, Inc. v. Raytheon Co., 93 F.3d 138, 146 (D. Del. 1982).)  The Court leaves for another day, and perhaps another court, what recourse CCI has against the Government for breach of the Non-Waiver Agreement.

The Court rejects defendants' contention that the waiver here should extend to all the Steptoe charts in their entirety.  The Payment Chart is 238 pages. (Heberlig Decl., ¶ 7.)  Disclosure was made with respect to less than 30

transactions.[4] (Hanna Decl., Ex. M, p. 2; Defendants' Supplemental Brief, Ex. A.) This does not represent a "significant portion" of the documents, Nguyen v. Excel Corp., 197 F.3d 200, 208 (5th Cir. 1999), nor have the disclosures amounted to a proverbial crossing the Rubicon which demands full disclosure as a matter of fairness. Weil v. Investment/Indicators, Research & Management, 647 F.2d at 24. (9th Cir. 1981). Moreover, given that the Court has limited the Government's case to the sixteen transactions in the Indictment, plus another thirty transactions which the Government has identified (Docket Nos. 220, 245), the need for the disclosure of all transaction is simply absent.

The Court does not find these disclosures so comprehensive to warrant the production of the entire Payment Chart or the other privileged Steptoe charts. There is no basis to find a blanket waiver. (Fed. R. Evid. 502(a).) Each transaction is discrete, and reflected on a single page. (Heberlig Decl., ¶ 7.) CCI continues to have a legitimate expectation in the confidentiality of the balance of the Steptoe charts. The deficiencies in the performance of Government counsel, discussed below, do not change this view.[5]

However, the Court does not believe that production should be limited to only those charts disclosed. Given that the Government acted with unilateral discretion to disclose pages of its choosing, the Court believes that the Government

---

[4]CCI represents that this amounts to 23 pages. (CCI Opposition, p. 13.)

[5]Defendants acknowledge that CCI's counsel "was plainly in the dark about the vast extent of the [Government's] disclosures." (Defendants' Further Reply Brief, p. 6.)

should be required to produce any chart that relates to a transaction identified in the Indictment or in the separate identification of transactions which the Court ordered, whether or not shown to a third party.

### B. Candor with the Court.

The Government opposed the original Motion to Compel. However, as noted by the Government (Gentin Decl., ¶ 8), less than a half page in its brief dealt with privilege, and the Government simply deferred to CCI. (Docket No. 120, p. 23.) CCI vigorously opposed the Motion and any attack on the Non-Waiver Agreement.

Obviously, the Court's assessment of the enforceability of the Non-Waiver Agreement would have been affected by evidence of any waiver in the form of a voluntary disclosure to third parties. Any lawyer would have understood as much. The Court considers the actions of counsel.

The Government points to evidence that defendants' counsel were or should have been aware of the disclosures prior to the November 2009 hearing. (Gentin Decl., ¶ 9.) As the Court stated in its tentative, the Court believes that had defense counsel been aware of and appreciated the fact of disclosures to third parties, they would have brought it to the Court's attention–it was surely in their interest to do so in attacking the Non-Waiver Agreement.

In the Court's view, CCI's counsel provides as full a view of his conversation with Government counsel about disclosures in July 2008 as he is able to do. (Herberlig Decl., ¶¶ 2-4.) Given the brevity of the record, the Court accepts

the representations of CCI counsel that he simply did not have the July 2008 conversation in mind at the November 2009 hearing. (Tr., pp 46-47.)

The position of Government counsel is troubling. His involvement with the third-party disclosure issue was not limited to a perhaps forgettable 30 second conversation. Over a period of many months, he disclosed or caused to be disclosed portions of the Steptoe charts to at least five witnesses and three counsel, according to the Government's filing on this Motion (Opposition, pp. 5-6), and the actual number of witnesses may have been as many as 20. (Defendants' Supplemental Brief, p. 3 & Ex. A.) As he stated to the Court at the hearing, he believed he had discretion to disclose whatever he chose to so long as the volume was limited. (Tr., pp. 32-33.) This fact was not disclosed in the relatively brief portion of the Government's opposition to the original Motion dealing with the privileged documents. (Docket No. 120, p. 23.) It was not disclosed to the Court during the course of oral argument. In his declaration, Government counsel states that he made "an inadvertent omission . . . due to the fact that neither [Government counsel] had focused on the selective waiver issue either prior to during the oral argument." (Gentin Dec., ¶ 10.) It is no answer that CCI took the laboring oar on defending its privilege. (Id., ¶ 8.)

The Court finds no deliberate intent to mislead the Court. However, the Court does find that Government counsel was negligent, and that the failure to disclose highly relevant facts to the Court fell substantially below the level of competence which the Court is entitled to expect of counsel, particularly counsel for the Government. The Court reprimands Andrew Gentin for his negligence.

On further observation is required. Having reviewed the

9

correspondence leading to the Motion for Reconsideration, the Court is separately critical of Government counsel for his lack of forthrightness in dealing with defense counsel. (Hanna Decl., Exs. H, J, L.) It was obvious that in their correspondence following disclosure of FBI 302s, defense counsel suspected that witnesses had been shown portions of the Steptoe charts–or at least documents that the Government had not produced to the defendants. (Id., Exs. F, G.) The Government should have made a full and candid disclosure of the facts far earlier. All parties' time and efforts in getting to the heart of the matter are wasted when disclosures are protracted and made one layer at a time, and then only when the Government is pressed.

III.   Conclusion.

     The Court grants the Motion in part. The Government shall produce within seven days (a) the specific pages of the Steptoe charts which its has disclosed to third parties or their counsel, and (b) any page which relates to any transaction in the Indictment or in the separate identification of transactions ordered by the Court. As part of the production, the Government shall also produce the two pages at the beginning of the numbered charts which provide a CCI Payment Chart Key and an Accounting Rank key. At the at the same time, counsel for the Government shall file a declaration that its production complies with this Order, including a representation that the input of all Government lawyers and investigators with likely knowledge of the disclosure of the Steptoe charts has been sought. To the extent that the Government makes any further disclosures of the Steptoe charts or any other documents to which CCI has asserted privilege, it shall be under an on-going obligation to make prompt production to defendants and to file a declaration advising the Court of such production. Production shall be

subject to the existing protective order.

Dated: October 21, 2010

_____
James V. Selna
United States District Judge

11